## CIRCUIT COURT OF THE CITY OF RICHMOND

Matthew Schurman

v.

Ellen Brock et al.

July 16, 1993

Case No. LU-3734-3

BY JUDGE T. J. MARKOW

This case came before the court on May 24, 1993, on defendants Cohen and Brock's motion to dismiss. The facts show that Dr. Cohen gave prenatal care to Brenda Schurman on February 9, 1987, and May 26, 1987. Dr. Cohen did not treat Brenda Schurman after May 26, 1987. Dr. Brock gave prenatal care to Brenda Schurman between January 29, 1987, and July 8, 1987. Dr. Brock did not treat Brenda Schurman after July 8, 1987. Plaintiff Matthew Schurman was born on July 18, 1987. He suffers from cerebral palsy paralysis, seizures, and other injuries alleged to be a result of substandard prenatal, perinatal, and postnatal care. Neither Dr. Cohen nor Dr. Brock was involved in the delivery of the plaintiff or in postpartum care. Thus, the question for the court is whether plaintiff Matthew Schurman was a "patient" of Drs. Cohen and Brock, within the meaning of the Medical Malpractice Act, when those doctors rendered only prenatal care.

Defendants Cohen and Brock argue that their liability is limited to that permitted under the Medical Malpractice Act, Chapter 21.1 of Title 8.01 of the Code of Virginia. They can be liable only for "malpractice" which is defined as "any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, *to a patient*" [emphasis added]. "Patient means *any natural person* who receives or should have received health care from a health care provider . . . . Va. Code Ann. § 8.01–581.1 (emphasis added). They claim that all services rendered by them were pro-

vided before the plaintiff's birth. He was, therefore, not a person and they could not have committed malpractice upon him.

Instructive on this issue is *Bulala v. Boyd*, 239 Va. 218 (1990). In that case, Helen Boyd went into early labor and was admitted into the hospital. Dr. Bulala, her obstetrician-gynecologist, was called, but he told the staff to monitor the situation rather than coming to the hospital himself. When the fetal heart rate dropped, indicating complications, nurses called the doctor, but Mrs. Boyd gave birth before he arrived. The baby suffered injuries as a result of insufficient oxygen, and both mother and child sued Dr. Bulala for malpractice.

The child could only pursue such a claim if she were considered Dr. Bulala's "patient" as defined in the Medical Malpractice Act. The court found that indeed she was, holding "at the moment of live birth, the child became the patient of the defendant obstetrician-gynecologist because she was a 'natural person' who, at the instant of birth, received or 'should have received' health care from defendant." *Bulala*, 239 Va. at 229. Timing is very important to this analysis: "at the moment of live birth, and until the pediatrician assumes responsibility of the care of the newborn, the infant is the obstetrician's 'patient'." *Id.* at 230.

Because Dr. Bulala was not present at delivery, any substandard care on his part presumably would have been rendered only before birth. The dissent was troubled by this implication that the child was a "patient" before it was born. However, the majority does not necessarily draw such a conclusion. Its concern was clearly focused on the time of birth forward, noting that "at the moment of live birth, the infant will not be deemed abandoned, under the care of no one." *Id.* at 229. The fact that Dr. Bulala was not present at delivery could have itself been malpractice, since at birth the child was a patient who received or *should have received* health care. In addition, the United States Court of Appeals had previously decided that "[t]here was evidence to support the plaintiffs' contention that the nurses acted under Dr. Bulala's direction, rendering him vicariously liable for their negligence." *Id.* at 226. Thus, if the nurses were negligent in delivering the child, Dr. Bulala's liability would not, as the dissent suggests, hinge upon the child being a "patient" while still *in utero*.

In the instant case, the only care rendered by Drs. Cohen and Brock was given before the child was born. *Bulala* holds that the infant, at the moment of live birth, becomes the "patient" of the obstetrician,

which this court interprets to mean the delivering physician or, as in that case, the physician who should have been present at the delivery. It does not hold that the child becomes the "patient" of every obstetrician-gynecologist who rendered prenatal care. There is no allegation in this case that Drs. Cohen or Brock were present or should have been present at the delivery of Matthew Schurman. Nor is there any allegation that Drs. Cohen and Brock are vicariously liable for the actions of someone who did render services at Matthew's delivery. As such, he was not their "patient" at the time those doctors rendered prenatal care to Brenda Schurman.

This conclusion is not contrary to *Kalafut v. Gruver*, 239 Va. 278 (1990), decided the same day as *Bulala*. In *Kalafut*, the Supreme Court of Virginia held that:

> [a] tortfeasor who causes harm to an unborn child is subject to liability to the child, or to the child's estate, for the harm to the child, if the child is born alive. *See* Restatement (Second) of Torts § 869(1). We do not limit the application of this rule to unborn children who are viable at the time of the tortious act. Thus, an action may be maintained for recovery of damages for any injury occurring after conception, provided the tortious conduct and the proximate cause of the harm can be established.

*Kalafut*, 239 Va. at 284. As the dissent in *Bulala* notes, this recognizes that "in order to become liable for personal injuries to another, a defendant must have caused injuries to a 'person'." *Bulala*, 239 Va. at 235 (Russell, J., dissenting). Thus, liability attaches once the child is born alive. However, recognition of common law liability for injury to a "person" is not a recognition of liability for injury to a "patient" under the statutorily-defined limits of the Medical Malpractice Act. The dissent in *Bulala* examined the two cases in relation to each other:

> Thus, if a child born alive has a cause of action for personal injuries sustained *in utero*, of what does its cause of action consist? . . . Because, as the majority acknowledges in Part V(A), the child had no existence as a "person" when the injury occurred, the answer can only be that the child, after birth, has a cause of action for the injury sustained by the mother's body, of which it was a part, resulting from defendant's negligence.

Further, the mother was the obstetrician's only "patient" at the time of his malpractice, because the Act defines a "patient" as a "natural person." Code § 8.01–581.1(3) . . . . It follows that although the child, after her birth, had a right to maintain an action in her own name, *Kalafut*, 239 Va. at 286, 389 S.E.2d at 685, the child's cause of action was entirely derivative of her mother's claim.

*Bulala*, 239 Va. 237 (Russell, J., dissenting).

Following the above reasoning in the instant case, since any acts of malpractice by Drs. Cohen and Brock would have been committed against their patient, Brenda Schurman, Matthew Schurman's claim against them is a derivative one. This impacts his right to recovery (i.e., he does not have the benefit of a separate statutory cap against these defendants), not his right to maintain the action.

Matthew Schurman's case will proceed as an action derivative of that of his mother's and not in his own right as to Drs. Cohen and Brock because he was not their patient when they treated his mother. The Motion to Dismiss should, therefore, be overruled. The court wishes to hear from counsel whether it will be necessary to realign parties or name new parties, if any feels this is required for consistency with this opinion.